UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

---

PENNSYLVANIA MANUFACTURERS'
ASSOCIATION INSURANCE COMPANY,

          Plaintiff,

          v.

BOJ OF WNC, LLC;
BOJANGLES OPCO, LLC; and
MICHAEL GODEY,

          Defendants.

Civil Action No.:

---

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, PENNSYLVANIA MANUFACTURERS' ASSOCIATION INSURANCE COMPANY ("PMAIC"), by its counsel, POPE AYLWARD SWEENEY & SANTANIELLO, LLP, files this Complaint for Declaratory Judgment against BOJ OF WNC, LLC ("BOJ"), BOJANGLES OPCO, LLC ("Bojangles Opco"), and MICHAEL GODEY ("Godey") (collectively, "Defendants") and in support thereof, states as follows:

### Nature of Action

1. PMAIC brings this action against Defendants seeking a declaration that PMAIC has no duty to defend or indemnify Defendants under a commercial general liability ("CGL") policy and five workers compensation and employers' liability ("WC/EL") policies issued by PMAIC in connection with a lawsuit filed against Defendants in the Superior Court Division of Haywood County, North Carolina, alleging Defendants are liable for injuries arising out of sexual

harassment that took place at Defendants' Bojangles restaurant in Haywood County, North Carolina.

## Parties

2. PMAIC is a Pennsylvania insurance company with its principal place of business located in Blue Bell, Pennsylvania.

3. BOJ is a Delaware limited liability company with its principal place of business at 5475 Lumley Rd, Ste. 101, Durham, North Carolina 27703-7718.[1]

4. Upon information and belief, BOJ's sole member, Jeffrey Rigsby, is a resident of North Carolina.

5. Bojangles Opco is a Delaware limited liability company with its principal place of business located at 9432 Southern Pine Blvd, Charlotte, North Carolina 28273-5553.

6. Upon information and belief, Bojangles Opco's sole member, Jeffrey Rigsby, is a resident of North Carolina.

7. Upon information and belief, Godey is domiciled in North Carolina.

## Jurisdiction and Venue

8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C § 1332 in that the amount in controversy exceeds $75,000, exclusive of interest and costs, and the dispute is between citizens of different states.

9. Jurisdiction is further appropriate because this is an action for declaratory judgment pursuant to 28 U.S.C. § 2201.

---

[1] According to filings with the North Carolina Department of the Secretary of State, BOJ filed articles of conversion on July 28, 2025, converting BOJ from a North Carolina limited liability company to a Delaware limited liability company.

10. An actual case and controversy of a justiciable nature exists between the parties involving the rights and obligations under insurance policies issued by PMAIC.

11. Venue is proper in this Court pursuant to 28 U.S.C. §1391(a) and 28 U.S.C. § 1391(b) in that a substantial part of the events or omissions giving rise to this claim occurred in this judicial district, and because Defendants reside in this judicial district.

## The Underlying Lawsuit

12. On June 17, 2025, Jane Doe 1 and Jane Doe 2 (collectively, the "Underlying Plaintiffs"), minors appearing under pseudonyms by and through their Guardian Ad Litem, Jill Berman, filed a lawsuit against Defendants in the General Court of Justice, Superior Court Division of Haywood County, North Carolina, pending under case no. 25CV000802-430 (hereinafter, the "Underlying Lawsuit"). A true and correct copy of the operative complaint in the Underlying Lawsuit is attached hereto as **Exhibit A**.

13. The Underlying Lawsuit seeks damages arising out of sexual harassment committed by general manager Dylan Sain ("Sain") against Underlying Plaintiffs beginning in or around April 2024 while Underlying Plaintiffs were employed by BOJ and/or Bojangles Opco at a Bojangles restaurant, located at 1119 Dellwood Road, Waynesville, North Carolina (the "Restaurant"). Ex. A, ¶¶ 5, 20-22.

14. The Underlying Lawsuit alleges BOJ owned, operated, and/or managed the Restaurant, and that BOJ is a franchisee of Bojangles Opco. Ex. A, ¶¶ 5, 8.

15. The Underlying Lawsuit alleges that in or around April 2024, Underlying Plaintiffs and Sain worked at the Restaurant and were employed by BOJ and/or Bojangles Opco. Ex. A, ¶¶ 20-21.

16. The Underlying Lawsuit alleges that while Underlying Plaintiffs were employed at the Restaurant, Sain openly and brazenly used his position of authority over Underlying Plaintiffs to repeatedly sexually abuse and exploit them. Ex. A, ¶ 22.

17. The Underlying Lawsuit alleges that Sain used threats and intimidation to force Underlying Plaintiffs to perform sexual acts on him, and that Sain's coercive and grooming behavior included openly providing preferential treatment to Underlying Plaintiffs while they were at work, including giving Underlying Plaintiffs pay raises and allowing them to take extensive breaks. Ex. A, ¶¶ 23-24.

18. The Underlying Lawsuit alleges that multiple employees raised their suspicions and concerns with "Unit Director" Godey, whose job responsibilities included overseeing the Restaurant, and despite Godey's direct knowledge that Sain was sexually abusing and exploiting Underlying Plaintiffs, Godey did nothing to protect Underlying Plaintiffs. Ex. A, ¶¶ 12, 29.

19. The Underlying Lawsuit alleges that Godey summarily dismissed the concerns raised by other employees about Sain's inappropriate behavior and told the other employees that they were "jealous." Ex. A, ¶ 29.

20. The Underlying Lawsuit alleges that Godey instructed Sain to terminate Jane Doe 1 because of Sain's relationship with Jane Doe 1. Ex. A, ¶ 29.

21. The Underlying Lawsuit alleges that BOJ and Bojangles Opco did nothing to stop and protect Underlying Plaintiffs from Sain's abhorrent pedophilic behavior despite BOJ and Bojangles Opco's actual knowledge of the sexual abuse and exploitation of Underlying Plaintiffs. Ex. A, ¶ 30.

22. The Underlying Lawsuit alleges Underlying Plaintiffs were not the only employees of the Restaurant who were sexually abused and exploited by Sain, including at least five young

4

female employee that may have been sexually abused while working at the Restaurant, while BOJ and Bojangles Opco turned a willing blind eye to what was happening. Ex. A, ¶¶ 31-32.

23. The Underlying Lawsuit alleges that on May 5, 2025, Sain was indicted by a Haywood County grand jury for: (1) three counts of Dissemination to a Minor Under the Age of 16 in violation of N.C.G.S. § 14-190.7; (2) three counts of Taking Indecent Liberties with a Child in violation of N.C.G.S. § 14-202.1; and (3) four counts of Third Degree Sexual Exploitation of a Minor in violation of N.C.G.S. § 14-190.7A. Ex. A, ¶ 33.

24. The Underlying Lawsuit alleges that on May 5, 2025, a superseding indictment was returned by a Haywood County grand jury against Sain for Statutory Sexual Offense with a Person 15 Years of Age or Younger in violation of N.C.G.S. § 14-27.30(A). Ex. A, ¶ 34.

25. The Underlying Lawsuit alleges, *inter alia*, that Defendants failed to monitor and supervise Underlying Plaintiffs and Sain, failed to train their employees and/or agents on the necessary protocols for recognizing, reporting, and preventing sexual abuse and harassment, failed to protect Underlying Plaintiffs from being sexually abused and exploited in the workplace by one of their managers, failed to intervene when they knew or should have known of the willful wanton and abhorrent sexual abuse and exploitation of Underlying Plaintiffs by Sain at the Restaurant, and failed to report the sexual abuse and exploitation of Underlying Plaintiffs as required by North Carolina law, which ultimately led to the repeated sexual abuse and exploitation of Underlying Plaintiffs. Ex. A, ¶¶ 38, 40, 49, 50.

26. The Underlying Lawsuit demands compensatory and punitive damages against Defendants based on theories of negligence, and willful and wonton conduct in a conscious and flagrant disregard of and indifference to the right a safety of others. *See* Ex. A, Counts I-II.

## The PMAIC Policies

**A. Commercial General Liability Coverage**

27.  PMAIC issued a CGL insurance policy no. 302575-13-73-05-9 to "Bojangles' Restaurants, Inc." for the policy period of January 30, 2025, to January 30, 2026 (the "CGL Policy"). A true and correct copy of the CGL Policy is attached hereto as **Exhibit B**.

28.  Subject to its terms and conditions, Insuring Agreement A – Bodily Injury and Property Damage Liability of the CGL Policy provides that PMAIC "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies" only if "the 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory'." Ex. B, pg. 43.

29.  The CGL Policy also includes Coverage B – Personal And Advertising Injury Liability coverage, which is not implicated by the claims in the Underlying Lawsuit as the Underlying Lawsuit does not allege "Personal and Advertising Injury" under Coverage B of the CGL Policy. *See* Ex. B, pg. 48, 57.

30.  Section II – Who Is An Insured of the CGL Policy provides, in relevant part, the following with regards to who qualifies as an insured under the CGL Policy:

> 1.  If you are designated in the Declarations as:
> \* \* \*
> d.  An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.
> \* \* \*
> 2.  Each of the following is also an insured:
>
>     a.  Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are

a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**(1)** "Bodily injury" or "personal and advertising injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;[* * *]

Ex. B, pg. 51-52.

31. The CGL Policy defines the term "You" to mean the Named Insured identified in the Declarations Page of the CGL Policy. Ex. B, pg. 43.

32. "Bojangles' Restaurants, Inc." is the Named Insured identified on the Declarations Page of the CGL Policy. Ex. B, pg. 6.

33. The CGL Policy is amended by an endorsement titled "Broadened Named Insured Coverage Form", which states as follows:

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following are added as insureds under (Section II) - Who Is an Insured:

**f.** Any subsidiary or organization which is legally incorporated or organized under the laws of the states, territories, possessions of the United States of America in which you own a financial interest of greater than 50% of the voting stock or otherwise maintain a controlling interest over assets and for which you have the responsibility of placing insurance:

**(1)** On the effective date of this coverage form.
**(2)** When it is newly acquired or formed by you during the policy period shown in the Declarations.

However, the Named "Insured" does not include any subsidiary or organization:

7

  **(1)** That is an "insured" under any other policy.
  **(2)** That has exhausted its Limit of Insurance under any other policy; or
  **(3)** That insurance carrier has become insolvent.

  Coverage does not apply to "bodily injury" or "property damage" that results from an "occurrence" that took place before you formed or acquired the organization.

  Coverage under this provision is afforded only until the end of the policy period or until the next twelve month anniversary, whichever is earlier.

Ex. B, pg. 128.

34. The CGL Policy defines the term "bodily injury" to mean "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." Ex. B, pg. 55.

35. The CGL Policy defines the term "occurrence" to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Ex. B, pg. 57.

36. Exclusion e. (Employer's Liability) of the CGL Policy, precludes coverage for the following:

 **e. Employer's Liability**

 "Bodily injury" to

 **(1)** An "employee" of the insured arising out of and in the course of:

  **(a)** Employment by the insured; or
  **(b)** Performing duties related to the conduct of the insured's business;
  [* * *]
 This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

 This exclusion does not apply to liability assumed by the insured under an "insured contract."

8

Case 1:25-cv-00395-MR-WCM  Document 1  Filed 11/07/25  Page 8 of 19

Ex. B, pg. 44.

37. The CGL Policy is amended by an endorsement titled "Employment-Related Practices Exclusion," which states as follows:

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage A – Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

**(1)** A person arising out of any:

  **(a)** Refusal to employ that person;
  **(b)** Termination of that person's employment; or
  **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person;[* * *]

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a)**, **(b)** or **(c)** above occurs before employment, during employment or after employment of that person;
**(2)** Whether the insured may be liable as an employer or in any other capacity; and
**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.[* * *]

**B.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

**(1)** A person arising out of any:

  **(a)** Refusal to employ that person;

9

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person;[* * *]

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a)**, **(b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.[* * *]

Ex. B, pg. 82.

### B. Workers Compensation and Employers' Liability Coverage

38. PMAIC issued WC/EL insurance policy no. 202400-13-73-05-9 to "Bojangles' Restaurants, Inc." for the policy period January 30, 2024, to January 30, 2025 (the "24-25 Bojangles' Restaurants WC/EL Policy"). A true and correct copy of the 24-25 Bojangles' Restaurants WC/EL Policy is attached hereto as **Exhibit C**.

39. PMAIC issued WC/EL insurance policy no. 202500-13-73-05-9 to "Bojangles' Restaurants, Inc." for the policy period January 30, 2025, to January 30, 2026 (the "25-26 Bojangles' Restaurants WC/EL Policy"). A true and correct copy of the 25-26 Bojangles' Restaurants WC/EL Policy is attached hereto as **Exhibit D**.

40. PMAIC issued WC/EL insurance policy no. 202400-15-11-33-6 to "Bojangles of Western NC LLC" for the policy period February 1, 2024, to February 1, 2025 (the "24-25 Bojangles of Western NC LLC WC/EL Policy"). A true and correct copy of the 24-25 Bojangles of Western NC LLC WC/EL Policy is attached hereto as **Exhibit E.**

41. PMAIC issued WC/EL insurance policy no. 202500-15-11-33-6 to "Bojangles of Western NC LLC" for the policy period February 1, 2025, to February 1, 2026 (the "25-26 Bojangles of Western NC LLC WC/EL Policy"). The 25-26 Bojangles of Western NC LLC WC/EL Policy was cancelled as of September 30, 2025. A true and correct copy of the 25-26 Bojangles of Western NC LLC WC/EL Policy is attached hereto as **Exhibit F**.

42. PMAIC issued WC/EL insurance policy no. 202500-16-47-88-2 to "BOJ of WNC, LLC" for the policy period September 30, 2025 to February 1, 2026 (the "25-26 BOJ WC/EL Policy"). A true and correct copy of the 25-26 BOJ WC/EL Policy is attached hereto as **Exhibit G**.[2]

43. The Insuring Agreement of Part Two – Employers' Liability Insurance of the WC/EL Policies provides that PMAIC "will pay all sums that [the insured] legally must pay as damages because of bodily injury to [the insured's] employees" and that the WC/EL Policies "applies to bodily injury by accident" during the policy period of the WC/EL Policies where the "bodily injury must arise out of and in the course of the injured employees employment by [the insured]." Ex. C, pg. 117; Ex. D, pg. 128; Ex. E, pg. 49; Ex. F, pg. 52; Ex. G, pg. 58.

44. The WC/EL Policies include the following provision with regards to who qualifies as an insured therein:

> B. **Who is Insured** You are insured if you are an employer named in Item 1 of the Information Page. If that employer is a partnership, and if you are one of its partners, you are insured, but only in your capacity as an employer of the partnerships employees.

Ex. C, pg. 116; Ex. D, pg. 127; Ex. E, pg. 48; Ex. F, pg. 51; Ex. G, pg. 57.

---

[2] Where appropriate, the 24-25 Bojangles' Restaurants WC/EL Policy, the 25-26 Bojangles' Restaurants WC/EL Policy, the 24-25 Bojangles of Western NC LLC WC/EL Policy, the 25-26 Bojangles of Western NC LLC WC/EL Policy, and the 25-26 BOJ WC/EL Policy will be referred to collectively herein as the "WC/EL Policies."

45. Part Two of the WC/EL Policies is subject to Exclusion C.7., which precludes coverage for the following:

    **C. Exclusions**

    This insurance does not cover: [* * *]

    7. Damages arising out of coercion, criticism, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination against or termination of any employee, or any personnel practices, policies, acts or omissions; [* * *]

Ex. C, pg. 118; Ex. D, pg. 129; Ex. E, pg. 50; Ex. F, pg. 53; Ex. G, pg. 59.

## COUNT I
## Declaratory Judgment – BOJ and Godey
## Do Not Qualify as Insureds Under the CGL Policy

46. PMAIC incorporates and re-alleges Paragraphs 1 through 45 above as and for Paragraph 46, as if fully set forth herein.

47. Subject to its terms and conditions, the CGL Policy only affords coverage to a person or organization qualifying as an "insured" therein.

48. The Declarations Page of the CGL Policy lists "Bojangles' Restaurants, Inc." as the Named Insured.

49. The CGL Policy's "Broadened Named Insured Coverage Form" Endorsement adds the following as insureds under Section II – Who Is An Insured: "[a]ny subsidiary or organization which is legally incorporated or organized under the laws of the states, territories, possessions of the United States of America in which [Bojangles' Restaurants, Inc.] owns a financial interest of greater than 50% of the voting stock or otherwise maintains a controlling interest over assets and for which [Bojangles' Restaurants, Inc.] has the responsibility of placing insurance: (1) [o]n the effective date of [the CGL Policy's] coverage form[] (2) [w]hen it is newly acquired or formed by

[Bojangles' Restaurants, Inc.] during the policy period shown in the Declarations [of the CGL Policy]."

50. Upon information and belief, Bojangles' Restaurants, Inc. does not own a financial interest greater than 50% of the voting stock or otherwise maintains a controlling interest over assets of BOJ for which Bojangles' Restaurants, Inc. has the responsibility of placing insurance (1) on the effective date of the CGL Policy's coverage form (2) when BOJ were newly acquired or formed by Bojangles' Restaurants, Inc. during the policy period shown in the Declarations of the CGL Policy.

51. BOJ is not an insured under the CGL Policy as BOJ does not qualify as an insured under Section II – Who Is An Insured of the CGL Policy, as amended by the Broadened Named Insured Coverage Form Endorsement.

52. To the extent Godey was an employee of BOJ, Godey does not qualify as an insured under the CGL Policy since BOJ does not qualify as an insured under the CGL Policy.

53. Even if BOJ qualified as an insured under the CGL Policy, the CGL Policy's Section II – Who Is An Insured provision provides: "none of these 'employees' . . . are insureds for: '[b]odily injury' . . . to . . . a co-'employee' while in the course of his or her employment or performing duties related to the conduct of your business."

54. Godey does not qualify as an insured under the CGL Policy for the additional reason that Godey's acts and/or omissions of allowing the repeated sexual abuse and exploitation of Underlying Plaintiffs concerns a "bodily injury" to a co-"employee" while Underlying Plaintiffs were in the course of their employment or performing duties related to the conduct of BOJ and/or Bojangles Opco's business.

55. As BOJ and Godey do not qualify as insureds under the CGL Policy, PMAIC has no duty to defend or indemnify BOJ and Godey in the Underlying Lawsuit under the CGL Policy.

56. An actual and justiciable controversy has arisen between PMAIC on the one hand, and BOJ and Godey on the other, concerning the obligations and scope of coverage available under the CGL Policy regarding the Underlying Lawsuit.

57. A judicial declaration is necessary and appropriate at this time so PMAIC can ascertain the extent of its coverage obligations under the CGL Policy with respect to the Underlying Lawsuit. A judicial declaration of the parties' rights and obligations under the CGL Policy will prevent further disputes and terminate the uncertainty and controversy which has given rise to this proceeding.

WHEREFORE, Plaintiff, PMAIC, respectfully prays that this Honorable Court grant the following relief:

   a. Determine and adjudicate the rights and liabilities of the parties hereto with respect to the CGL Policy;

   b. Find and declare that BOJ and Godey do not qualify as insureds under the CGL Policy in connection with the Underlying Lawsuit;

   c. Find and declare that PMAIC has and had no duty to defend or to indemnify BOJ and Godey under the CGL Policy in connection with the Underlying Lawsuit; and

   d. Grant PMAIC such other and further relief that the Court deems proper under the facts and circumstances.

### COUNT II
### Declaratory Judgment – No Duty to Defend or Indemnify
### BOJ, Bojangles Opco, and Godey under the CGL Policy

58. PMAIC incorporates and re-alleges Paragraphs 1 through 57 above as and for Paragraph 58, as if fully set forth herein.

14

Case 1:25-cv-00395-MR-WCM     Document 1     Filed 11/07/25     Page 14 of 19

59. PMAIC does not owe a duty to defend BOJ, Bojangles Opco and Godey against the claims asserted in the Underlying Lawsuit under the CGL Policy as Exclusion e. (Employer's Liability) applies to preclude coverage, as any "bodily injury" alleged by Underlying Plaintiffs in the Underlying Lawsuit arose out of and in the course of Underlying Plaintiffs' employment by BOJ and/or Bojangles Opco, or duties performed by Underlying Plaintiffs related to the conduct of BOJ and Bojangles Opco's business.

60. In addition to the Employer's Liability Exclusion, the "Employment-Related Practices Exclusion" Endorsement in the CGL Policy separately precludes coverage for the Underlying Lawsuit because any "bodily injury" alleged by Underlying Plaintiffs in the Underlying Lawsuit arose out of employment-related practices, policies acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination, or malicious prosecution directed at Underlying Plaintiffs.

61. An actual and justiciable controversy has arisen between PMAIC on the one hand, and BOJ, Bojangles Opco and Godey on the other, concerning the obligations and scope of coverage available under the CGL Policy regarding the Underlying Lawsuit.

62. A judicial declaration is necessary and appropriate at this time so PMAIC can ascertain its coverage obligations to BOJ, Bojangles Opco and Godey for defense and indemnity under the CGL Policy regarding Underlying Plaintiffs' claims against BOJ, Bojangles Opco and Godey. A judicial declaration of the parties' rights and obligations under the CGL Policy will prevent further disputes and terminate the uncertainty and controversy which has given rise to this proceeding.

WHEREFORE, Plaintiff, PMAIC, respectfully prays that this Honorable Court grant the following relief:

a. Determine and adjudicate the rights and liabilities of the parties hereto with respect to the CGL Policy;

b. Find and declare that Exclusion e. (Employer's Liability) and the "Employment-Related Practices Exclusion" Endorsement in the CGL Policy preclude coverage for the Underlying Lawsuit;

c. Find and declare that PMAIC has and had no duty to defend or to indemnify Bojangles Opco, and Godey under the CGL Policy in connection with the Underlying Lawsuit; and

d. Grant PMAIC such other and further relief that the Court deems proper under the facts and circumstances.

## COUNT III
## Declaratory Judgment – Bojangles Opco and Godey
## Do Not Qualify as Insureds Under the WC/EL Policies

63. PMAIC incorporates and re-alleges Paragraphs 1 through 62 above as and for Paragraph 63, as if fully set forth herein.

64. Subject to its terms and conditions, the WC/EL Policies only afford coverage to a person or organization qualifying as an "insured" therein.

65. The Information Page of the 24-25 Bojangles' Restaurants WC/EL Policy and the 25-26 Bojangles' Restaurants WC/EL Policy list "Bojangles' Restaurants, Inc." as the Named Insured.

66. The Information Page of the 24-25 Bojangles of Western NC LLC WC/EL Policy and the 25-26 Bojangles of Western NC LLC WC/EL Policy list "Bojangles of Western NC LLC" as the Named Insured.

67. The Information Page of the 25-26 BOJ WC EL Policy lists "BOJ of WNC, LLC" as the Named Insured.

68. The Who is Insured section of the WC/EL Policies provides that the employer identified as the Named Insured in the Information Page of the WC/EL Policies is an insured.

16

69. Bojangles Opco and Godey are not insureds under the WC/EL Policies as Bojangles Opco and Godey are not identified in the Information Page of the WC/EL Policies.

70. As Bojangles Opco and Godey do not qualify as an insured under the WC/EL Policies, PMAIC has no duty to defend or indemnify Bojangles Opco and Godey in the Underlying Lawsuit under the WC/EL Policies.

71. An actual and justiciable controversy has arisen between PMAIC on the one hand, and Bojangles Opco and Godey on the other, concerning the obligations and scope of coverage available under the WC/EL Policies regarding the Underlying Lawsuit.

72. A judicial declaration is necessary and appropriate at this time so PMAIC can ascertain the extent of its coverage obligations under the WC/EL Policies with respect to the Underlying Lawsuit. A judicial declaration of the parties' rights and obligations under the WC/EL Policies will prevent further disputes and terminate the uncertainty and controversy which has given rise to this proceeding.

WHEREFORE, Plaintiff, PMAIC, respectfully prays that this Honorable Court grant the following relief:

  a. Determine and adjudicate the rights and liabilities of the parties hereto with respect to the WC/EL Policies;

  b. Find and declare that Bojangles Opco and Godey do not qualify as insureds under the WC/EL Policies in connection with the Underlying Lawsuit;

  c. Find and declare that PMAIC has and had no duty to defend or to indemnify Bojangles Opco and Godey under the WC/EL Policies in connection with the Underlying Lawsuit; and

  d. Grant PMAIC such other and further relief that the Court deems proper under the facts and circumstances.

### COUNT IV
### Declaratory Judgment – No Duty to Defend or Indemnify
### BOJ, Bojangles Opco and Godey under the WC/EL Policies

73. PMAIC incorporates and re-alleges Paragraphs 1 through 72 above as and for Paragraph 73, as if fully set forth herein.

74. The WC/EL Policies only afford coverage for bodily injury by an accident that occurs during the policy period.

75. The Underlying Lawsuit was filed on June 17, 2025, prior to the inception of the policy period of the 25-26 BOJ WC/EL Policy on September 30, 2025.

76. As the Underlying Lawsuit does not allege any bodily injury during the policy period of the 25-26 BOJ WC/EL Policy, PMAIC has no duty to defend or indemnify Defendants in the Underlying Lawsuit under the 25-26 BOJ WC/EL Policy.

77. Exclusion C.7. of the WC/EL Policies precludes coverage for the Underlying Lawsuit because the Underlying Lawsuit seeks damages arising out of coercion, criticism, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination against or termination of any employee, termination of employment, or any personnel practices, policies, acts or omissions.

78. As Exclusion C.7. precludes coverage for the WC/EL Policies, PMAIC does not owe a duty to defend BOJ, Bojangles Opco and Godey against the claims asserted in the Underlying Lawsuit under the WC/EL Policies.

79. An actual and justiciable controversy has arisen between PMAIC on the one hand, and BOJ, Bojangles Opco and Godey on the other, concerning the obligations and scope of coverage available under the WC/EL Policies regarding the Underlying Lawsuit.

80. A judicial declaration is necessary and appropriate at this time so PMAIC can ascertain its coverage obligations to the BOJ, Bojangles Opco and Godey for defense and indemnity under the WC/EL Policies regarding Underlying Plaintiffs' claims against BOJ and

Bojangles Opco. A judicial declaration of the parties' rights and obligations under the WC/EL Policies will prevent further disputes and terminate the uncertainty and controversy which has given rise to this proceeding.

WHEREFORE, Plaintiff, PMAIC, respectfully prays that this Honorable Court grant the following relief:

a. Determine and adjudicate the rights and liabilities of the parties hereto with respect to the WC/EL Policies;

b. Find and declare that the insuring agreement and Exclusion C.7. of the WC/EL Policies preclude coverage for the Underlying Lawsuit;

c. Find and declare that PMAIC has and had no duty to defend or to indemnify BOJ, Bojangles Opco and Godey under the WC/EL Policies in connection with the Underlying Lawsuit; and

d. Grant PMAIC such other and further relief that the Court deems proper under the facts and circumstances.

Respectfully submitted,

s/ Andrew J. Santaniello
Andrew J. Santaniello
Pope Aylward Sweeney & Santaniello, LLP
6701 Carmel Road, Suite 105
Charlotte, NC 28226
Tel: 704-414-7303
Fax: 704-759-8966
Andys@passlawyers.com

Brian C. Bassett (pro hac vice forthcoming)
Traub Lieberman Straus & Shrewsberry LLP
71 S. Wacker Drive, Suite 2110
Chicago, IL 60606
Tel: 312-332-3900
Fax: 312-332-3908
bbassett@tlsslaw.com


Dated: November 7, 2025